FILED

2011 JUN 27  PM 4: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

OLIVIER A. TAILLIEU (SBN 206546)
otaillieu@ztllp.com
SARAH S. BROOKS (SBN 266292)
sbrooks@ztllp.com
**ZUBER & TAILLIEU LLP**
777 S. Figueroa Street, 37th Floor
Los Angeles, California 90017
Telephone: (213) 596-5620
Facsimile: (213) 596-5621

Attorneys for Defendant Panorama Towers III, LLC; Hallier Properties, LLC; Laurence Hallier

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA ANDERSON,<br><br>Plaintiff,<br><br>v.<br><br>PANORAMA TOWERS III, LLC; HALLIER PROPERTIES, LLC; LAURENCE HALLIER<br><br>Defendants.<br><br>PANORAMA TOWERS III, LLC, a Nevada limited liability company; HALLIER PROPERTIES, LLC, a Nevada limited liability company; LAURENCE HALLIER, an individual<br><br>Counterclaimants<br><br>v.<br><br>PAMELA ANDERSON, an individual,<br><br>Counter-defendant. | CASE NO. CV 11-02431-GW-(PJWx)<br><br>**DEFENDANT HALLIER PROPERTIES, LLC COUNTERCLAIMS AGAINST PAMELA ANDERSON**<br><br>**JURY TRIAL DEMANDED**<br><br>The Honorable George H. Wu |

Without waiving any of its defenses, Defendant and counterclaimant Hallier Properties, LLC, ("Defendant" or "Counterclaimant") by and through the undersigned attorneys respectfully alleges the following counterclaims against Plaintiff and Counter-defendant Pamela Anderson ("Anderson" or "counter-defendant").

## NATURE OF ACTION AND RELIEF SOUGHT

1.  This is an action concerning a contract that was signed between Anderson and Hallier Properties, LLC ("Hallier Properties") for promotional services by Anderson in exchange for $200,000 and one condominium unit in Las Vegas, Nevada.

## PARTIES

2.  Defendant and counterclaimant Hallier Properties LLC ("Hallier Properties" or "counterclaimant") is a limited liability company who is a citizen of the State of Nevada and has its principal place of business in Las Vegas, Nevada.

3.  Plaintiff and counter-defendant Pamela Anderson is an individual who is a citizen of California and conducts business in the County of Los Angeles.

## JURISDICTION AND VENUE

4.  Jurisdiction is appropriate pursuant to 28 U.S.C. §1332 (a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

5.  Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 (b)(1) because the events or omissions which give rise to these claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

6.  Laurence Hallier ("Hallier") is a highly successful businessman who made a name for himself by revolutionizing advertising on taxi cabs.

7. In 1994 Hallier started his first taxi top advertising company called Taxi Tops. The company was so successful that he sold it to ClearChannel for $124 million in 2000.

8. In 2007, Hallier started a new taxi top company called Show Media. Show Media places advertisements on top of taxis using LED displays and similar to Taxi Tops has also been hugely successful.

9. In June 8, 2004 Hallier started a new company called Hallier Properties, LLC ("Hallier Properties") to develop real estate in Las Vegas, Nevada.

10. Hallier is the President of Hallier Properties.

11. The Las Vegas real estate development was called the Panorama Towers Condominium project and planned on building four high end condominium towers near the Las Vegas strip called Panorama Towers I, II, III and IV.

12. As part of his promotional efforts, Hallier solicited and signed contracts with several celebrities to promote the Panorama Towers condominiums.

13. Celebrity promotion was essential to the success and sale of the Panorama Towers condominiums.

14. One celebrity, Leonardo DiCaprio, with whom Hallier had a signed contract, helped sell over 100 condominium units after several personal appearances and press coverage promoting Panorama Towers condominiums.

15. On February 27, 2006 Anderson and Hallier Properties signed a contract whereby Anderson was to perform certain services in exchange for one condominium unit. (Exhibit A).

16. According to §2.02 of the contract, Anderson was to "personally attend" certain events and to provide certain promotional services during the first eight weeks following February 27, 2006.

17. According to §2.02 of the contract, Anderson was to attend two public events promoting the Panorama Towers Condominium Project in Las, Vegas,

Nevada;. five private events with Hallier in Los Angeles, CA; and one multi-day event with Hallier in London, England.

18. Anderson attended only one event in Los Angeles, one event in Las Vegas and one event in London, England.

19. In addition, according to §2.02 of the contract, Anderson was to make herself available for at least one in-depth interview on the condominium project.

20. Anderson did not do so.

21. In exchange for these services, Anderson received an initial payment of $200,000.

22. Anderson received this payment on March 30, 2006.

23. Pursuant to the contract, Anderson was to receive one condominium unit in Panorama Tower IV ("Tower IV").

24. Pursuant to §2.04 of the contract, in the event that construction on Tower IV was not completed by March 31, 2009, Anderson was to receive $1,000,000.

25. Tower IV was not completed by March 31, 2009.

26. However, Anderson did not receive a payment of $1,000,000 because she did not complete the promotional services she agreed to perform pursuant to the February 27, 2006 contract.

27. Instead, the Panorama Tower project was unable to sell all of the condominium units and lost money in the amount of $22.5 million.

## FIRST CAUSE OF ACTION

(Breach of Contract)

28. Hallier Properties incorporates by reference all of the above paragraphs as if fully set forth herein.

29. Anderson and Hallier Properties entered into a written contract on February 27, 2006 for promotional services in exchange for $200,000 and one condominium unit.

30. Anderson was paid $200,000 pursuant to the contract.

31. Anderson failed to perform the promotional services pursuant to the contract therefore constituting a breach of contract.

32. This breach of contract by Anderson is the direct and proximate cause of damages to Hallier Properties in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Hallier Properties respectfully requests that the Court enter judgment in its favor and against counter-defendants Anderson as follows:

1. Awarding Hallier Properties compensatory damages, pursuant to the 2006 contract.

2. Awarding Hallier Properties his pre-judgment, post-judgment and monetary interest as provided by law.

3. Awarding Hallier Properties such other and further relief as the Court deems just and proper.

Dated: June 27, 2011                    Respectfully submitted:

**ZUBER & TAILLIEU LLP**
OLIVIER A. TAILLIEU
SARAH S. BROOKS

By: _____
Attorneys for Defendant Hallier Properties, LLC

# EXHIBIT A

## AGREEMENT

This Agreement ("Agreement") is made as of the 27th day of February, 2006, by and among Hallier Properties, LLC, a Nevada limited liability company, its successors, subsidiaries, affiliated entities and/or assigns (the "Developer") with offices at 4230 Decatur Blvd, Suite 200, Las Vegas, Nevada 89103, phone #702-739-3002, facsimile #702-739-0021, Attention: Laurence Hallier, and Pamela Denise Anderson ("Artist") c/o, Greenberg Traurig, 2450 Colorado Avenue, Suite 400E, Santa Monica, California, 90404, Attention: Henry Holmes, phone # (310) 586-7858 facsimile number (310) 586-0258.

## WITNESSETH:

WHEREAS, Developer or its affiliate is the owner of the condominium project known as The Panorama Towers IV Condominium (the "Condominium") located on the Northwest corner of Dean Martin Drive and near Interstate 15, Las Vegas, Nevada (the "Property") as further described in the Offering Documents (hereinafter defined); and

WHEREAS, Developer has agreed to sell and transfer to the Artist one (1) Unit (hereinafter defined) in the Condominium for a purchase price of one hundred dollars ($100.00) and pay Artist Two Hundred Thousand and 00/100 dollars ($200,000.00) in consideration and subject to the Artist performing the promotional services described in Section 2.02 for the Developer as described in this Agreement.

NOW, THEREFORE, for mutual consideration, the receipt and sufficiency of which is hereby acknowledged by the parties hereto, Artist and Developer agree as follows:

## ARTICLE 1
## DEFINITIONS

§1.01 As used in this Agreement, the following words, terms and phrases shall have the following meanings:

"Closing" shall mean the date title to the first condominium units located in Tower IV of the Panorama Towers Condominium are transferred to the purchaser thereof, as such closing date is described and defined in the Offering Documents.

"Purchase Contract" shall mean the purchase contract the purchaser of a condominium unit in the Condominium is required to execute pursuant to the Offering Documents in order to purchase the condominium unit in question.

"Offering Documents" shall mean the Panorama Towers IV Condominium Offering Plan, as the same may be modified or amended from time to time, and the documents a purchaser of a condominium unit in the Condominium is required to execute and deliver, including, without limitation the Purchase Agreement, in order to acquire title

|   |   |
|---|---|
|   | to a condominium unit in the Condominium as required pursuant to such offering documents. |
| "Tower IV" | shall mean the residential condominium tower known as "Panorama Towers IV Condominium" anticipated to be constructed by the Developer at the Property, as further described in the Offering Documents. |
| "Unit" | shall mean as follows: the condominium unit known as unit 3110 on the 31st floor of the Condominium and consisting of approximately one thousand nine hundred (1,900) square feet and as further described in the Offering Documents. |

## ARTICLE 2
## OBLIGATIONS

§2.01 **Transfer to Artist.** For and in consideration of Artist's promotional services described herein and for the purchase price of one hundred dollars ($100.00) to be paid at the Closing the Developer shall transfer to Artist or artists assignee (subject to the assignment restrictions of §3.07 of this Agreement), in accordance with the Offering Documents, title to the Unit selected by Artist provided Artist complies with the procedures to purchase the Unit as set forth in the Offering Documents and Artist performs the promotional services described herein. Developer agrees and acknowledges that the imputed value (the "Imputed Value") of the Unit is One Million, Two Hundred Thousand dollars ($1,200,000.00). Developer shall also pay Artist Two Hundred Thousand and 00/100 dollars ($200,000.00) within thirty (30) days of execution of this Agreement as additional consideration (the "Additional Consideration") for the promotional services described herein.

§2.02 **Promotional Services.**

The Artist shall personally attend the following "Events" and provide the following promotion services during the first eight weeks following the execution of this Agreement, all subject to Artist's professional availability:

(a) Two (2) public events promoting the Panorama Towers Condominium project (the "Las Vegas Events") to be held on the dates and at the times established by the Developer in coordination with Artist at a venue selected by the Developer in Las Vegas, Nevada. Artist acknowledges that press will be invited to attend and report on the Las Vegas Events. The dates selected for the Las Vegas Events shall be mutually determined by Developer and Artist.

(b) Five (5) private events with the principal of the developer, Laurence Hallier, (the "Los Angeles Events") to be held on the dates and at the times established by the Developer in coordination with Artist at a venue selected by the Developer in Los Angeles, California. Artist acknowledges that press may be present at, and report on, the Los Angeles Events. The dates selected for the Las Vegas Events shall be mutually determined by Developer and Artist.

(c) One (1) multi-day event with the principal of the developer, Laurence Hallier, (the "Europe Event") to be held in London during the week of March 10th through the 15th, on

2



mutually agreeable days and times. Artist acknowledges that press may be present at, and report on, the Europe Event.

(d) Artist agrees to make herself available for the Events. The Developer shall be permitted to issue and release to the press, press releases regarding the Las Vegas and Europe Events (the "Press Releases") and Artist's acquisition of the Unit and participation in the project. Developer may display the Press Releases and related media reports on its website, in the Developer's sales office and in other marketing activities of the Developer.

(e) Artist agrees to make herself available for at least one (1) in-depth interview regarding Artist's purchase of the Unit and involvement in the Condominium project. When Artist or Artist's employees, agents and professionals are contacted by press, Artist agrees to acknowledge that she has purchased a Unit in the Condominium project and cause her employees, agents and professionals to do the same. Further, Artist acknowledges and agrees that the terms, including without limitation the Unit purchase price, and existence of this Agreement are to be held strictly confidential and shall not be disclosed to any party except to her employees, accountants and attorneys. Further, Artist agrees to represent that her attendance at the Events is socially motivated.

(f) Developer, at its expense, shall provide security at the Las Vegas Events, including upon request a personal security guard for the Artist and such additional security, as reasonably requested by the Artist. To the extent necessary, Developer will provide transportation in the form of a private jet for the Las Vegas and Los Angeles Events and a first class airline tickets for Artist and one guest to the Europe Event. At Artist's sole discretion, Artist may elect to return from the Europe Event with Laurence Hallier, on his private jet. Developer also will cover all expenses for Artist's hair and make-up personnel including, without limitation, travel and accommodations for each.

§2.03 Sales/Lease of Unit. Artist acknowledges and agrees that notwithstanding anything contained in the Offering Documents to the contrary Artist shall not be permitted to sell or otherwise transfer, directly or indirectly, title to its Unit other than to the Artist or an entity wholly owned or controlled by the Artist, until after the first (1st) anniversary of the Closing date of the Unit (the "Restricted Period"). Purchaser further acknowledges (i) that no lease of the Unit for less than one hundred eighty (180) days shall be permitted and (ii) during the Restricted Period no lease (other than to the Artist or members of the Artist's immediate family) for more than twelve (12) months shall be permitted. Any sale, transfer or lease of the Unit in violation of this Agreement shall be deemed null and void.

§2.04 Guaranteed Sale Amount. In the event that (i) the Developer shall fail to complete construction of Tower IV of the Condominium on or before March 31, 2009, or (ii) that the Unit cannot be sold by Artist within one year of the end of the Restricted Period for an amount equal to One Million Dollars and 00/100 ($1,000,000.00) or more, then, in lieu of purchasing or maintaining ownership of the Unit in Tower IV, Artist may elect to receive payment of One Million Dollars and 00/100 ($1,000,000.00) (the "Guaranteed Sale Amount") from the Developer. If Artist makes such an election, Artist shall have no right to purchase the Unit and, if Artist has closed on the Unit, shall transfer to Developer all right, title and interest to the Unit in exchange for the Guaranteed Sale Amount.

3

§2.05 **Professionals' Fees.** Developer agrees to pay the reasonable attorney's fees up to the amount of ten thousand dollars and 00/100 ($10,000.00) incurred by Artist in the negotiation of this Agreement. If any action, suit, arbitration or other proceeding is instituted concerning or arising out of this Agreement, the prevailing party shall recover all of such party's costs and reasonable outside attorneys' fees incurred in each and every such action, suit or other proceeding, including any and all appeals or petitions therefrom.

Developer agrees to pay reasonable fees incurred by Artist's publicist relative to Artist's purchase of the Unit and involvement in Condominium project.

§2.06 **Indemnity.** Developer acknowledges and agrees that Artist has no involvement in the financing, development, construction, sale and/or lease of the Condominium. Developer will defend, indemnify and hold harmless Artist from any and all claims, demands, penalties, interest, costs and expenses of every kind whatsoever (including, without limitation, reasonable attorneys fees) in connection with claims by third parties against Artist arising from or relating to the physical condition of the building, the land upon which it is erected or the demised premises or the financing, development, construction, sale and/or lease by Developer of the Condominium except if caused by the willful acts or negligence of Artist or her invitees.

## ARTICLE 3
## MISCELLANEOUS

§3.01 **Entire Agreement/Amendment.** This Agreement may be amended only in writing signed by both parties. This is the entire Agreement between the parties and there are no other agreements except as set forth herein.

§3.02 **Notices.** Unless otherwise provided in this Agreement or by written agreement of the parties, all notices or other communications required or permitted to be given under this Agreement shall be deemed given when delivered personally or three (3) days after mailing by registered or certified mail, return receipt required, postage prepaid or on the day delivered if sent by overnight courier service or facsimile, to the parties at their addresses or facsimile numbers set forth at the beginning of this Agreement or at such other addresses or facsimile numbers as any parties may respectively designate in writing to the other parties.

§3.03 **Binding Effect.** Except as otherwise provided in this Agreement to the contrary, this Agreement shall be binding upon and inure to the benefit of the parties, their affiliates, personal representatives, successors and assigns.

§3.04 **Counterparts.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall be deemed to constitute one and the same instrument and it shall be sufficient for each party to have executed at least one, but not necessarily the same, counterpart.

§3.05 **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada without regard to conflict of law principles. The invalidity or unenforceability of any particular provision of this Agreement shall be construed in all respects as if such invalid or unenforceable provision were omitted.

4

Sutton.Hatter.Docs.Sutton.Hatter.Agreement.McQuinn.v1.02.10.05

§3.06 Facsimile Copies. Facsimile copies of this Agreement or of any counterpart and facsimile signatures hereon or on any counterpart shall have the same force and effect as originals.

§ 3.07 Assignment. This Agreement may not be assigned or otherwise transferred by Artist; provided, however, Artist may take title to the Unit in any corporate or other entity name Artist desires provided Artist owns at least fifty-one (51%) percent of the ownership interests of such entity or is the primary beneficiary of any trust owning the Unit.

§3.08 Confidentiality and Breach. Artist acknowledges and agrees that the terms and existence of this Agreement are to be kept strictly confidential and that such confidentiality is part of the basis of the bargain of this Agreement. Therefore, the parties hereto shall keep secret and retain in strictest confidence the terms of this Agreement and the terms of any and all agreements related to Artists involvement in the Condominium and related projects and shall not disclose the terms of this Agreement to anyone except to their employees, accountants and attorneys or as expressly permitted herein or if required by law or upon express prior written consent of the non-disclosing party.

In the Event Artist breaches the terms of this Agreement, this Agreement shall be null and void and of no further force or effect and the Artist shall have no right to purchase the Unit or any other unit in the Condominium. **ARTIST AND DEVELOPER ACKNOWLEDGE AND AGREE THAT ACTUAL DAMAGES INCURRED AS A RESULT OF THE BREACH OF THIS AGREEMENT ARE DIFFICULT TO ASCERTAIN AT THE EXECUTION OF THIS AGREEMENT AND THAT THE FORFEITURE OF PURCHASE RIGHT AS SET FORTH HEREIN IS A REASONABLE ESTIMATE OF THE DAMAGES SELLER SHALL INCUR IN THE EVENT ARTIST BREACHES THIS AGREEMENT AND SHALL BE DEEMED LIQUIDATED DAMAGES, AND NOT A PENALTY.** Developer and Artist may also obtain any equitable relief (e.g., injunctive relief) available to compel Artist and Developer to abide by the provisions of this Agreement.

§3.09 Relationship of Parties. Each of the parties hereto shall be and remain an independent contractor and nothing herein shall be deemed to create an employment relationship between the parties or constitute the parties as partners or joint venturers. Further, the parties shall not have any authority to act or attempt to act, or represent themselves, directly or by implication, as an agent of the others or in any manner assume or create, or attempt to assume or create, any obligation on behalf of or in the name of the others, nor shall any party be deemed the agent of the other.

§3.10 Non-Competition. Artist agrees that she will not for a period of three (3) years following the execution of this Agreement (hereinafter the "Restricted Period"), directly or indirectly engage in "Competitive Activity" with the Company within seventy-five (75) miles of the Developer, which is located at 4230 South Decatur Blvd., Las Vegas, Nevada 89103. For purposes of this Section 3.10, "Competitive Activity" shall mean any activity on behalf of herself or any entity, other than the Developer, that owns, operates, manages, or sells "High-Rise Residential" apartments, units, condominiums, housing, living quarters, or homes. "High-Rise Residential" means any building or structure that has more than ten (10) floors, stories, or levels.

5

**IN WITNESS WHEREOF**, the undersigned parties have hereunto affixed their signatures and seals on the separate counterpart signature pages attached hereto as of the date first above written.

Haller Properties, L.P.

By: _____
Name: Laurence Haller
Title: Chairman

By: _____
Name: Pamela Denise Anderson

6

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of California. My business address is 777 S. Figueroa Street, 37th Floor, Los Angeles, California 90017.

On June 27, 2011, I served true copies of the following document(s) described as **DEFENDANT AHLLIER PROPERTIES, LLC COUNTERCLAIMS AGAINST PAMELA ANDERSON** on the interested parties in this action as follows:

A. Douglas Mastroianni
Mastroianni Law Firm
633 West Fifth Street, 28th Floor
Los Angeles, CA 90071
T: (213) 223-2246
F: (213) 223-2247
E: mastroiannilaw@yahoo.com
*Attorney for Plaintiff PAMELA ANDERSON*

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Zuber & Taillieu LLP's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 27, 2011, at Los Angeles, California.

_____
Mekaela Brook Stephens

1595-1002 / 187066.1

COUNTERCLAIMS